*97 The opinion of the Court was delivered by
Withers, J.
The question here is, whether a prohibition can go to a Magistrate’s Court who have convicted certain slaves of the relators of the offence of harboring certain other slaves hired to one Caraway.
The first ground taken in support of the prohibition is, that the offence was tried in a beat other than that wherein the offence was committed; the position being, that the freeholders can be summoned only from those who live within the bounds of the beat where an offence is perpetrated.
The Court recognizes no legal validity in this position. The magistrate’s jurisdiction is co-extensive with the limits of the judicial district, and there is no statutory restriction fixing the venue of a trial for misdemeanor by a slave to any particular beat, and therefore, neither the jurisdiction of the Court, nor the source whence the .freeholders are to be derived can be thus restricted.
The only other ground upon which this question is to turn? is, the exclusion of the Magistrate’s Court of certain testimony which, it is argued, was competent. • «
The guilt of the negroes upon trial depended upon the testimony of certain slaves who were held upon hire from one of the relators by one Caraway — and the evidence excluded was, that he had once been heard to say (not in reference to this trial), “that no negro under his control should tell any thing against him.”
We are to enquii’e whether the exclusion of such testimony (conceding it to have been competent) is cause for prohibition to restrain the execution of sentence, which 'directs corporal punishment, by chastisement, of ten and fifteen lashes, respectively, upon several slaves convicted.
The process of prohibition arises from the fact, that the supreme authority commits the administration of justice to a variety of tribunals, which creates a necessity that a superintending power shall exist, and be exerted upon fit occasion, to *98 restrain each within its prescribed orbit, and so prevent intolerable confusion and disorder. This superintending power cannot be exerted, under our form of government, safely, conveniently, intelligently and promptly, over erratic inferior courts, by any other than the supreme judicial tribunal.
This reflection shows that the original scope of the writ of „ prohibition, so far as it respects inferior judicial tribunals, was limited to the object of confining such to the cognizance of matters lawfully committed to them, by the course of the Common Law or by Statute, and thus of restraining them from excess of jurisdiction. And this conclusion is fortified by what was always said, in early times at any rate, in all suggestions, seeking the writ, to wit., that the cause is drawn ad aliud examen than the proper tribunal, against the dignity of the Crown.
Says Blackstone, 3 Com., 112, “ or .if, in handling matters clearly within their cognizance, they (that is, the Courts Christian,) transgres? the bounds prescribed to them by the laws of England, as where they require two witnesses to prove the payment of a legacy, a release of tithes, or the like, in such cases also, a prohibition will be awarded.” The reason assigned is, that such matters are'not originally within their jurisdiction, but come in collaterally, and ought, therefore, to be decided according to the temporal law, that properly controls them, instead of the law spiritual, that does not; otherwise the same question might be determined in different ways, according to the Court in which it should be depending.
The next succeeding paragraph in the Commentaries shows, that the character of the contest waged in England between the ecclesiastics and the crown, the former denying the supremacy of the civil power over them, gave rise to a free use of the writ of prohibition and other prerogative writs, in order that the “ course of the common law” should be vindicated against the pretensions of the civil law, which was regarded as aiming, under astute and ambitious managers and dignitaries, to work *99 hateful and dangerous encroachments upon a venerated system of jurisprudence: one that had been sanctified by the king and barons in Magna Charta. We may thus see, that the idea of enforcing “the course of the common law,” or “the settled principles of the common law,” which phrases, and the like, we sometimes find in our own reports, had, in the mouths of English Judges when applied to the proceedings of inferior Courts alien to that system, as Ecclesiastical Courts, Courts Martial, and so on, an origin and significance, that might render it too strong, if indiscriminately applied to errors of legal interpretation made by inferior tribunals with us, moving however within the orbit prescribed for them, and recognizing the binding obligations of the common law, but from whose decisions an appeal is withheld. It was, accordingly, not inaptly said, in the case of the State vs. Nathan, 4 Rich. 514, that the remedy existing in that case entirely superseded “ the doubtful authority of all those cases wherein the superior Courts have undertaken to correct, by prohibition, the errors or mistakes of inferior Courts, as to what the law is.” Nor was it inaptly said, in the case of the State vs. Wakely, 2 N. & McC. 410, that “ every Court acting clearly within its jurisdiction, in a case legally submitted, is independent of all other Courts to which no appeal is given.” Mere irregularity, insufficiency of proof, or mistaken judgment, afford matter for appeal only. This doctrine is cited with approbation in the case of Price vs. Commissioners of Roads, 3 Hill, 314, though it was also added there, by way of general remark, that the subject matter and the person being within the jurisdiction, the judgment was final and conclusive, unless the Board, in some matter “exceeded the bounds prescribed to them, admitted illegal evidence, or otherwise violated the settled rules of the common law.”
Lord Loughborough, who furnished an authority for the decision of the State vs. Wakely, in the case of Grant vs. Sir Charles Gould, 2 H. Bl. 100, professed in that case, to know only two sources of prohibition, to wit, first where an inferior Court *100 assumed to act in matters not within its cognizance, and second, (which he regarded as a species of the other,) “ where an Act has passed in respect to any authority resident in other Courts, as in the Ecclesiastical Courts, in which there is inherent jurisdiction. In such a case, the Courts of Westminster Hall have conceived, that where the authority is limited by an Act of Parliament, the Court which acted differently from the prescription of the Act, was in that instance exceeding its jurisdiction, and, therefore, liable to a prohibition.” Upon such ground ■well rests our ease restraining a Magistrate’s Court from executing sentence of death where a different punishment was applicable, or from trying a second time the same party for the same offence.
Lord Loughborough further remarked upon the ground of receiving improper and rejecting proper evidence, and said;— “ That all Common Law Courts ought to proceed upon the general rule, namely, the best evidence the nature of the case will admit, I perfectly agree. But, that all other Courts are in all cases, to adopt all the distinctions that have been adopted in Courts of common law, is rather a larger proposition than I •choose to assent to.”
It is obvious that if every error, as to the law of evidence, committed by a Magistrate’s Court, shall be held to warrant a' writ of prohibition, it would not only thwart the object of legislation, where it designed the judgment to be final and not subject to review by appeal, but it would arrest altogether the course of justice — for a prohibition can involve no new trial, but prevents the execution of any judgment whatever. It will not do to say, that a Court overleaps the limits of its jurisdiction, because it decides a point of law^wrong, in the course of a trial conducted according to lawful form, in a cause and in relation to a person lawfully brought before it, and within the power conferred upon it.
Whether there be any distinction, such as was attempted in Leonard’s case, 3 Rich. 111, between the error of judgment in *101 admitting illegal evidence, and that of excluding what is legal, need not now be discussed. But in the last-mentioned case a prohibition was refused, in a cause of landlord and tenant, although the ground of that application was the refusal to hear competent testimony.
Such is the ground in the present case, it being likewise observable, that the evidence excluded in this instance pertained to a merely collateral question, that is, it was designed to affect the credibility of the witnesses before the Court. It was no more, in theory, than would have been the objection, that Caraway’s presence (and he was present) overawed the negroes, and the Court had refused to exclude him — or the rejection of witnesses, as to general good or bad character. The negroes gave in evidence the fact, that Caraway had whipped them or some of them, and thereby extracted a different tale from that first told, and threatened to whip them again if they did not adhere to that last told to him. This was reprehensible conduct, if it was correctly reported; detestable, if it was meant to enforce the development of falsehood upon the trial. But certainly Caraway’s conduct was before the Court in a light stronger than would have been shed upon it by the general observation imputed to him by the excluded witness.
However shocking may be the conduct of a Magistrate’s Court in occasional instances, and however successfully their flagrant violation of law may appeal for the writ of prohibition, wrn must not use it with such a loose freedom as to bring under review every error that by law is not the subject matter of appeal, merely because the Legislature has not provided a remedy and has thought proper to trust, with the right of final judgment’, a magistrate and freeholders.
When we remember what the imputed error in the present instance is, that if the evidence had been heard and disregarded, in the deliberation and finding of the Court, there would have been no remedy; and also resort to the thirteenth Section of the A. A., 1740, which directs the evidence of all free Indians *102 and slaves to be received without oath, and proceeds to enjoin that,' “ the weight of which evidence being seriously considered, and compared with all other circumstances attending the case, shall be left to the conscience of the justices arid freeholders;” and when, finally, we recur to the causes that have recommended the writ now sought, as disclosed by our cases — we shall find no warrant to say that, upon reason or precedent, it ought to go now.
The order, therefore, directing the writ of prohibition in these two cases, is reversed, and the motion to that effect granted.
ONjsall, Wardlaw, Whitner and Glover, JJ., concurred.

Motion granted.